# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SANCTUARY SYSTEMS, LLC, et al.,<br><br>Defendants. | Case No.  22-cv-02561-BLF<br><br>**ORDER DENYING  SANCTUARY DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TRANSFER VENUE**<br><br>[Re:  ECF 28] |

Plaintiff  Employers Mutual Casualty Company ("EMC") filed this declaratory relief action to resolve insurance coverage disputes arising from two policies it issued to Defendant Sanctuary Systems, LLC ("Sanctuary") – a Commercial General Liability Policy ("CGL Policy") and a Commercial Umbrella Policy ("Umbrella Policy") (collectively, the "Policies").  EMC requests a declaration that the Policies do not give rise to a duty to defend or indemnify Sanctuary and other potential insureds in a California state court action ("Underlying Action") arising from Sanctuary's sales of allegedly defective filtration materials to California manufacturers of N95 masks.  EMC also claims entitlement to recoup any monies it may pay to provide a defense or indemnification in the Underlying Action.

EMC seeks this relief against three defendants in the Underlying Action:  Sanctuary, 305 Consulting, LLC ("305 Consulting"), and Bryan Sigler (collectively, "the Sanctuary Defendants").  EMC also seeks relief against the plaintiffs in the Underlying Action, Advoque Safeguard, LLC ("Advoque") and Ciasom LLC ("Ciasom"), on the basis that they may become judgment creditors with a direct right of action against EMC.[1]

---

[1] EMC has voluntarily dismissed additional Defendants Robert Sigler, Global Trust Group, LLC, and Benham Pourdeyhimi.  *See* Notices of Voluntary Dismissal, ECF 25, 29.

United States District Court
Northern District of California

The Sanctuary Defendants move to dismiss this action for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) or, in the alternative, to transfer this action to the United States District Court for the Eastern District of North Carolina, Sanctuary's home state, pursuant to 28 U.S.C. § 1404(a).  EMC opposes the motion.

For the reasons discussed below, the Sanctuary Defendants' motion is DENIED.

## I.  BACKGROUND

*Sanctuary*

Sanctuary is a limited liability company organized under the laws of North Carolina.  *See* Barnes Decl. ¶ 5, ECF 28-1.  Since its formation in 2017, the company's only members have been North Carolina resident Benham Pourdeyhimi and Alabama resident Mac Barnes III.  *See id.* ¶¶ 23, 10-12.  Sanctuary produces "nonwoven materials," including materials for use in the manufacture of masks used to protect against COVID-19.  *See id.* ¶¶ 11-16.  Its principal place of business and sole manufacturing facility are located in Fremont, North Carolina.  *See id.* ¶ 5.  Sanctuary has thirty-seven employees who work in North Carolina and one who works in Alabama.  *See id.* at 7.

*The Policies*

In February 2020, Sanctuary obtained the subject Policies from EMC, a corporation organized and existing under the laws of the State of Iowa with its principle place of business in Iowa.  *See* Compl. ¶ 4, ECF 1; Barnes Decl. Ex. A, Policies.  The Policies were issued through the Montgomery, Alabama office of EMC's agent, Thomson Insurance, Inc.  Barnes Decl. ¶ 9.

While they do not identify the place of execution or acceptance, the Policies list Montgomery, Alabama addresses for Sanctuary and Thomson.  *See* Barnes Decl. Ex. A, CGL Policy at 8, Umbrella Policy at 55.[2]  The Policies provide nationwide coverage to Sanctuary and other qualifying insureds for liability arising from covered commercial operations.  *See* Barnes Decl. Ex. A, CGL Policy at 26, Umbrella Policy at 75.  The Policies have been renewed through

---

[2] Citations to the Policies refer to the ECF page numbers.

1   February 2023.  *See* Hopper Decl. ¶ 2, ECF 30-3.

2          *Underlying Action*

3          On December 17, 2021, California-based companies Advoque and Ciasom filed the

4   Underlying Action, titled *Advoque Safeguard, LLC et al. v. Sanctuary Systems LLC et al.*, in the

5   Santa Clara County Superior Court.  *See* Barnes Decl. Ex. B, Underlying Compl.  Advoque and

6   Ciasom allege that during the height of the COVID-19 pandemic, they obtained contracts worth

7   more than 125 million dollars to manufacture N95 masks, including a 90 million dollar contract

8   with the State of California.  *See id.* at ¶¶ 17, 31.  Advoque and Ciasom contracted with Sanctuary

9   for the supply of materials to be used in the manufacture of N95 masks, based in part on

10  representations by Sanctuary, 305 Consulting, and Bryan Sigler that the materials would meet or

11  exceed applicable filtration requirements for N95 masks.  *See id.* ¶¶ 18-24.  305 Consulting is a

12  limited liability company organized under the laws of Nevada with its principal place of business

13  in Las Vegas, Nevada.  *See* Bryan Sigler Decl. ¶ 5, ECF 28-2.  Bryan Sigler is 305 Consulting's

14  sole member, and he resides in Florida.  *See id.* ¶ 3.

15         When tested, the N95 masks manufactured by Advoque and Ciasom with materials

16  supplied by Sanctuary failed to meet the required 95% filtration efficiency.  *See* Underlying

17  Compl. ¶¶ 25-29.  Advoque and Ciasom allege that the materials supplied by Sanctuary were

18  defective and failed to meet or exceed applicable filtration requirements for N95 masks as

19  promised.  *See id.* ¶¶ 29-31.  As a result, Advoque and Ciasom allegedly breached their contracts

20  and suffered catastrophic business losses.  *See id.*  They assert nineteen state law claims against

21  Sanctuary, 305 Consulting, Bryan Sigler, and others, including claims for breach of contract,

22  negligence, breach of warranty, fraud, unfair business practices.

23         *Present Declaratory Relief Action*

24         Sanctuary tendered the defense of the Underlying Action to EMC under the Policies.  *See*

25  Hopper Decl. ¶ 3.  EMC agreed to defend Sanctuary, 305 Consulting, and Bryan Sigler under a

26  reservation of rights.  *See id.* ¶ 8.  EMC thereafter filed the present suit against the Sanctuary

27  Defendants, Advoque and Ciasom, and others who have since been dismissed, asserting claims

28  for:  (1) declaratory relief re no duty to defend; (2) declaratory relief re no duty to indemnify;

1    (3) recoupment re defense expenses; and (4) recoupment re indemnity.  *See* Compl., ECF 1.

2         *Current Motion*

3         The Sanctuary Defendants move to dismiss EMC's complaint for lack of personal

4    jurisdiction under Rule 12(b)(2) and improper venue under Rule 12(b)(3) or, in the alternative, to

5    transfer this action to the United States District Court for the Eastern District of North Carolina,

6    Sanctuary's home state, under 28 U.S.C. § 1404(a).

7    **II.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

8         **A.    Legal Standard**

9         A party may challenge the Court's personal jurisdiction over it by bringing a motion to

10   dismiss under Federal Rule of Civil Procedure 12(b)(2).  When a defendant raises a challenge to

11   personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper.  *See*

12   *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).  The plaintiff may meet that burden by

13   submitting affidavits and discovery materials.  *Id*.  "Where, as here, the defendant's motion is

14   based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima

15   facie showing of jurisdictional facts to withstand the motion to dismiss."  *Ranza*, 793 F.3d at 1068

16   (quotation marks and citation omitted).  "[T]he plaintiff cannot simply rest on the bare allegations

17   of its complaint," but the uncontroverted allegations in the complaint must be accepted as true and

18   factual disputes created by conflicting affidavits must be resolved in the plaintiff's favor.

19   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quotation marks

20   and citation omitted).

21        "Where, as here, there is no applicable federal statute governing personal jurisdiction, the

22   district court applies the law of the state in which the district court sits."  *Schwarzenegger*, 374

23   F.3d at 800.  "Because California's long-arm jurisdictional statute is coextensive with federal due

24   process requirements, the jurisdictional analyses under state law and federal due process are the

25   same."  *Id*. at 800-801.  "Although a nonresident's physical presence within the territorial

26   jurisdiction of the court is not required, the nonresident generally must have 'certain minimum

27   contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play

28   and substantial justice.'"  *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Int'l Shoe Co. v.*

United States District Court
Northern District of California

4

1  *Washington*, 326 U.S. 310, 316 (1945)).

2      A federal district court may exercise either general or specific personal jurisdiction over a

3  nonresident defendant.  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).  General personal

4  jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render

5  [it] essentially at home in the forum State."  *Id*. (quotation marks and citation omitted).  Specific

6  personal jurisdiction exists when the defendant's contacts with the forum state are more limited

7  but the plaintiff's claims arise out of or relate to those contacts.  *Id*. at 127-28.

8      **B.      Discussion**

9      As discussed above, Sanctuary is based in North Carolina, 305 Consulting is based in

10  Nevada, and Bryan Sigler is a resident of Florida.  The burden is on EMC to establish that the

11  Sanctuary Defendants have sufficient contacts with California to give rise to either general or

12  specific personal jurisdiction.  EMC does not attempt to establish the existence of general personal

13  jurisdiction, but it argues that the Sanctuary Defendants' contacts with California give rise to

14  specific personal jurisdiction in this case.

15      The Ninth Circuit has established a three-prong test for whether a court can exercise

16  specific personal jurisdiction over a non-resident defendant:  (1) the defendant "must purposefully

17  direct his activities or consummate some transaction with the forum or resident thereof; or perform

18  some act by which he purposefully avails himself of the privilege of conducting activities in the

19  forum, thereby invoking the benefits and protections of its laws"; (2) "the claim must be one

20  which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of

21  jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

22  *Schwarzenegger*, 374 F.3d at 802.  "The minimum contacts test ensures that a defendant will not

23  be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts."

24  *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018)

25  (quotation marks and citation omitted).  "The plaintiff bears the burden of satisfying the first two

26  prongs of the test." *Schwarzenegger*, 374 F.3d at 802.  If the plaintiff succeeds, the burden shifts

27  to the defendant to set forth a "compelling case that the presence of some other considerations

28  would render jurisdiction [in California] unreasonable."  *Freestream*, 905 F.3d at 607.

United States District Court
Northern District of California

### 1.    Purposeful Availment or Purposeful Direction

Under the first prong of the test, EMC must show either purposeful availment or purposeful direction by the Sanctuary Defendants.  "[A] showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Freestream*, 905 F.3d at 605 (quotation marks and citation omitted).  "By contrast, [a] showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id.* (quotation marks and citation omitted).  "[A] purposeful availment analysis is most often used in suits sounding in contract, whereas a purposeful direction analysis is most often used in suits sounding in tort." *Id.* (quotation marks and citation omitted).

EMC's claims against the Sanctuary Defendants are grounded in the Policies and thus sound in contract.  Ordinarily, the Court would apply a purposeful availment analysis to a suit sounding in contract.  In this case, however, EMC argues that the scope of its contractual obligations under the Policies depends on the allegations in the Underlying Action, which include both contract and tort claims against the Sanctuary Defendants.  Thus, EMC asserts, the Sanctuary Defendants' conduct giving rise to the Underlying Action should be considered in determining the existence of personal jurisdiction.  This assertion is disputed by the Sanctuary Defendants, who argue that contacts relating to the Underlying Action should not factor into the personal jurisdiction analysis in this declaratory relief action.  According to the Sanctuary Defendants, the current declaratory relief action does not arise out of those contacts, but rather arises solely out of the Policies entered into by North Carolina company Sanctuary and Iowa company EMC.

In the Court's view, this dispute more properly is addressed at the second prong of the minimum contacts test, which asks whether the claim at issue "arises out of or relates to the defendant's forum-related activities." *Schwarzenegger*, 374 F.3d at 802.  At the first prong, which asks only whether the defendant engaged in purposeful activities creating contacts with the forum state, the Court will consider all of the Sanctuary Defendants' purposeful contacts with California.

6

1    EMC asserts that the Sanctuary Defendants purposefully availed themselves of the

2    privilege of doing business in California by entering into contracts with California-based

3    companies Advoque and Ciasom to supply them with materials for use in the manufacture of N95

4    masks that in turn would be sold in California.  Advoque and Ciasom claim that Sanctuary

5    accepted more than 8 million dollars in exchange for mask materials it supplied to them in

6    California.  *See* Underlying Compl. ¶¶ 36-38.  Sanctuary entered into a nondisclosure agreement

7    with Advoque in connection with the supply contracts.  *See* Pl.'s Compendium Ex. 3,

8    Nondisclosure Agreement, ECF 30-1.  The nondisclosure agreement was signed by Bryan Sigler

9    on behalf of Sanctuary.  *See id.*  Bryan Sigler and 305 Consulting allegedly made

10   misrepresentations to California-based Advoque and Ciasom in connection with the supply

11   contracts.  *See* Underlying Compl. ¶¶ 18-24.  All of the Sanctuary Defendants allegedly

12   participated in tortious conduct, including negligence and fraudulent concealment, directed toward

13   California in connection with supplying defective mask materials to Advoque and Ciasom.  *See id.*

14   ¶¶ 54-56, 98-104.  The Court finds these contacts sufficient to establish that the Sanctuary

15   Defendants purposefully availed themselves of the privilege of doing business in California and

16   purposefully directed their conduct to California.  The first prong of the minimum contacts test is

17   satisfied.

18        EMC directs the Court to other contacts related to the Underlying Action as well, including

19   the Sanctuary Defendants' failure to challenge personal jurisdiction in the Underlying Action,

20   their defense of the Underlying Action, and their request that EMC defend and indemnify them in

21   the Underlying Action.  Numerous district courts have concluded that such conduct does not

22   constitute "purposeful" activity, reasoning that "while an out-of-state insured demands a defense,

23   it did not choose to litigate in the underlying forum, such that it is purposefully availing itself of a

24   particular forum."  *Ohio Sec. Ins. Co. v. Premium Food Grp., Inc.*, No. CV 21-15690 (FLW), 2022

25   WL 2358425, at *4 (D.N.J. June 30, 2022); *see also Admiral Ins. Co. v. Briggs*, No. CIV.A.

26   302CV0310P, 2002 WL 1461911, at *7 (N.D. Tex. July 2, 2002) (rejecting insurer's argument in

27   declaratory relief action "that by demanding a defense under the Policy, [defendant insureds] have

28   invoked the protection of Texas insurance law, and that this constitutes personal availment of

7

United States District Court
Northern District of California

1   Texas law sufficient to establish minimum contact with the forum"). Following the rationale of

2   those cases, this Court agrees that the Sanctuary Defendants' litigation of the Underlying Action,

3   and request for a defense and indemnity in that action, do not constitute "purposeful" activity.

4       EMC has identified one contrary decision from this district, *Evanston*, a declaratory relief

5   action in which the court found that a non-resident defendant was "subject to specific personal

6   jurisdiction . . . due to his participation in the underlying suit." *Evanston Ins. Co. v. Honso USA,*

7   *Inc.*, No. C 10-05596 WHA, 2011 WL 1362071, at *5 (N.D. Cal. Apr. 11, 2011). The *Evanston*

8   court found it significant that the state court had found the non-resident defendant subject to

9   personal jurisdiction in the underlying suit and "declined to part company" with the state court on

10  that issue. *See id*. *Evanston* is factually distinguishable from the present case, and this Court does

11  not find its rationale applicable here. It is this Court's view that being sued in a particular forum,

12  and requesting that an insurer defend such suit, do not constitute "purposeful" activities by an

13  insured. This Court therefore declines to follow *Evanston*.

14      For the reasons discussed above, however, the Sanctuary Defendants' purposeful forum-

15  related activities related to the supply contracts with Advoque and Ciasom are sufficient to satisfy

16  the purposeful availment/purposeful direction prong.

17      **2.      Arises Out Of or Relates To**

18      The real crux of the parties' jurisdictional dispute is whether EMC's declaratory relief

19  action "arises out of or relates to" the Sanctuary Defendants' forum-related activities.

20  *Schwarzenegger*, 374 F.3d at 802. In determining whether a plaintiff's claim arises out of or

21  relates to the defendant's forum-related activities, "the Ninth Circuit follows the 'but for' test."

22  *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007) (quotation marks and citation omitted).

23  Under this test, EMC must show that its claims would not have arisen "but for" the Sanctuary

24  Defendants' California-related conduct.

25      The Ninth Circuit has not offered guidance on whether an insurer's declaratory relief

26  action may be said to arise out of or relate to its insured's activities giving rise to the underlying

27  action for which coverage is sought. Other federal courts have split on this issue, some courts

28  holding that the insured's activities relating to the underlying action do factor into the personal

United States District Court
Northern District of California

1  jurisdiction analysis and others holding that they do not.  The two lines of cases are discussed

2  below.

3              *Cases Holding that Contacts re Underlying Action Do Factor into Analysis*

4              EMC cites several cases in which an insurer's declaratory relief action was found to "arise

5  out of or relate to" the insured's forum contacts that led to the underlying action.  *Bartile Roofs*,

6  another declaratory relief action brought by EMC, is directly on point.  The insured, Bartile, was a

7  Utah-based roofer that worked on construction of a luxury hotel near Jackson Hole, Wyoming.

8  *See Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153 (10th Cir. 2010).  After being

9  named as a party in a California state court action stemming from the construction project, Bartile

10  tendered the defense of the state court action to EMC under CGL policies.  *See id.* at 1157-58.

11  EMC agreed to provide a defense under a reservation of rights and thereafter filed a declaratory

12  relief action in the United States District Court for the District of Wyoming.  *See id.* at 1158.  As

13  here, EMC sought a declaration that it had no duty to defend or indemnify in the underlying state

14  court action, and recoupment of any defense costs incurred.  *See id.*  Bartile moved to dismiss the

15  declaratory relief action for lack of personal jurisdiction and improper venue or, in the alternative,

16  to transfer the action to the United States District Court for the District of Utah, its home state.

17  *See id.*  The district court denied the motion.  *See id.*

18              On appeal, the Tenth Circuit rejected Bartile's argument that the district court erred in

19  exercising personal jurisdiction.  *See Bartile*, 618 F.3d at 1164.  As relevant here, the Tenth

20  Circuit found that EMC's declaratory relief action arose out of or related to Bartile's Wyoming

21  contacts because "EMC seeks to avoid having to defend or indemnify Bartile for injuries arising

22  out of the allegedly negligent work on the luxury hotel in Wyoming."  *Id.* at 1161.  The court

23  found expressly that "[t]he but-for causation approach is satisfied because Bartile's allegedly

24  negligent work was an event in the causal chain leading to the request for a declaratory judgment."

25  *Id.*

26              A number of district courts have applied a similar approach in finding the existence of

27  personal jurisdiction in declaratory relief actions brought by insurers.  In *Splash Dogs*, the district

28  court rejected an insured's challenge to personal jurisdiction in a declaratory relief action filed by

United States District Court
Northern District of California

his insurer, finding that the declaratory relief action arose out of the insured's forum-related activities that led to the underlying suit. *See Capitol Specialty Ins. Corp. v. Splash Dogs*, *LLC*, 801 F. Supp. 2d 657, 666 (S.D. Ohio 2011). The insured was in the business of "canine dock jumping," which involves sporting competitions in which dogs jump from docks into pools of water. *See id*. at 661. Although not a resident of Ohio, the insured held a jumping competition there and also performed work for an Ohio-based competitor called DockDogs, which eventually filed the underlying suit against the insured. *See id*. at 662. In the insurer's subsequent declaratory relief action, the district court found that the coverage issue had "a substantial connection" to the insured's Ohio activities. *See id*. at 670. The district court concluded that the insurer's claims "arose in the wake of DockDogs' statutory and tort claims," and that had the insured "not done the things he did," the insurer would not have any claims to assert in the declaratory relief action. *Id*. at 671 (internal quotation marks and citation omitted).

In *Massachusetts Bay*, the district court likewise considered the insured's conduct related to the underlying action in determining the existence of personal jurisdiction in the insurer's declaratory relief action. *See Massachusetts Bay Ins. Co. v. Portland Water Dist.*, No. CIV. 99-487-M, 2000 WL 1499493 (D.N.H. May 10, 2000). The insured, Portland Water District ("PWD"), provided wastewater and sewage treatment services to citizens in the Portland, Maine area. *See id*. at *1. PWD entered into an agreement with a third party to dispose of PWD's wastewater treatment plant residuals in both Maine and New Hampshire. *See id*. The third party allegedly deposited toxic sludge generated by PWD on a farm in New Hampshire. *See id*. at *2. After a man who lived nearby died from respiratory problems, his parents and estate sued PWD in state court. *See id*. PWD tendered the defense of the state court suit to its insurer, Massachusetts Bay, which provided a defense under a reservation of rights and filed a declaratory relief action in the United States District Court for the District of New Hampshire. *See id*. The district court denied PWD's motion to dismiss the declaratory relief action for lack of personal jurisdiction, concluding that "this declaratory judgment action arises directly out of PWD's having allegedly disposed of toxic waste in this forum, its having been named as a defendant in the underlying state tort action, and Mass Bay's desire to obtain a judicial determination of its obligations, if any, to

1    provide PWD with a defense in this state and indemnify it for any damages it must pay in the

2    pending tort action." *Id*. at *4.

3                    *Cases Holding that Contacts re Underlying Action Do Not Factor into Analysis*

4                    The Sanctuary Defendants urge the Court not to follow the cases cited by EMC, and

5    instead to follow cases holding that personal jurisdiction in a declaratory relief action depends on

6    the insured's contacts relating to the policies, not the insured's contacts relating to the underlying

7    action.  In *Ohio Security Insurance*, an insurer filed a declaratory relief action in the United States

8    District Court for the District of New Jersey against its insured, Premium, and additional insured,

9    Nut Cravings, to determine its coverage obligations regarding a New Jersey state court action

10   against Nut Cravings.  *See Ohio Sec. Ins. Co.*, 2022 WL 2358425.  The state court action, brought

11   by a husband and wife, alleged that the wife suffered multiple strokes after consuming unwashed

12   poppy seeds purchased from Nut Cravings through the Amazon.com marketplace.  *See id*. at *3.

13   The district court determined that although the sale of allegedly defective products into New

14   Jersey might subject Nut Cravings to specific personal jurisdiction in the underlying state court

15   action, that sale did not subject Nut Cravings to personal jurisdiction in the declaratory relief

16   action.  *See id*. at *6.  The district court reasoned that the "declaratory judgment claim, which

17   alleges that Nut Cravings is not covered by Premium Food's policies . . . do not 'arise out of or

18   relate to' the alleged commercial activities of Nut Cravings." *Id*.  The district court concluded that

19   "this dispute arises out of insurance policies that were purchased by a New York Corporation in

20   New York from a New York insurance broker," and that as a result personal jurisdiction did not lie

21   in New Jersey.  *Id*.

22                   The district court applied a similar rationale in *Hartford*, a declaratory relief action brought

23   by an insurer in the United Stated District Court for the Eastern District of Virginia to determine

24   its coverage obligations regarding an underlying action pending in the same court.  *See Hartford*

25   *Cas. Ins. Co. v. JR Mktg., LLC*, 511 F. Supp. 2d 644, 645 (E.D. Va. 2007).  Specifically, the

26   insurer sought a declaration that its insureds had no right to independent counsel in the underlying

27   action.  *See id*.  The district court dismissed the declaratory relief action for lack of personal

28   jurisdiction over the insureds, a California-based company and individual California residents.

*United States District Court*
*Northern District of California*

11

1    *See id.* at 651.  The court held that the declaratory relief action "concerns the insureds' rights

2    under the CGL Policy, not the claims asserted against them in the Virginia Action."  *Id*. at 650.

3    Observing that "the mere purchase of an insurance policy with nationwide coverage does not

4    subject an insured to personal jurisdiction in every state of the union," the district court concluded

5    that "[w]hile the insureds might have foreseen business litigation in Virginia at the time they

6    purchased the CGL Policy, they could not reasonably anticipate being haled into court there to

7    determine their rights under an insurance policy delivered to them in California."  *Id*. (internal

8    quotation marks and citation omitted).

9         In *Pierce*, insurers filed a declaratory relief action in the United States District Court for

10   the Eastern District of Missouri to determine its coverage obligations regarding an underlying

11   action pending in the same court.  *See Nat'l Indem. Co. v. Pierce Waste Oil Serv., Inc.*, 740 F.

12   Supp. 721, 723 (E.D. Mo. 1990).  The underlying action was brought by the United States to

13   recover environmental clean-up costs relating to the insureds' operation of waste oil storage tanks

14   in Missouri.  *See id*.  The district court determined that it lacked personal jurisdiction over the

15   Illinois-based insureds, because the declaratory relief action concerned only the parameters of the

16   insureds' contractual relationship with the insureds.  *See id*. at 724.  The district court reasoned

17   that:

18        The parties' contract defines the parameters of this relationship by setting forth
          their respective rights and establishing the scope of plaintiffs' potential liability.
19        Neither defendants' contracting to lease property in Missouri, nor defendants'
          transaction of business or possession of real estate in Missouri created additional
20        rights or enlarged the scope of plaintiffs' potential liability.  These activities may
          have *prompted* plaintiffs to seek this declaratory judgment, but they did not give
21        rise to the rights at issue in this case.  On the contrary, the parties' respective rights
          and the universe of plaintiffs' liability were established when they entered into a
22        contract for insurance in Illinois.

23   *Id*. (footnotes omitted).  The district court concluded that "because this cause of action arises from

24   acts occurring exclusively in Illinois, the Missouri long-arm does not provide personal jurisdiction

25   over the Pierce defendants with respect to this declaratory judgment action."  *Id.*

26        *This Court Follows the Cases that Consider Contacts re Underlying Action*

27        This Court finds the line of cases relied on by EMC to be more persuasive.  Just as the

28   Tenth Circuit found in *Bartile* that EMC's declaratory relief action would not have arisen but for

12

United States District Court
Northern District of California

1    Bartile's forum-related conduct giving rise to the underlying action, *see Bartile*, 618 F.3d at 1161,

2    this Court finds that EMC's declaratory relief action would not have arisen but for the Sanctuary

3    Defendants' California-related conduct giving rise to the underlying action.  Under these

4    circumstances, the Court is at a loss to understand how it could divorce the present declaratory

5    relief action from the underlying state court action, as urged by the Sanctuary Defendants.  There

6    is a "causal connection between the actions that give rise to an underlying lawsuit and insurance

7    coverage questions pertaining to that case."  *Splash Dogs*, 801 F. Supp. 2d at 666.  "[T]his case

8    involves more than merely the interpretation of an insurance contract formed [elsewhere] and an

9    insured with no contacts with this forum."  *Massachusetts Bay*, 2000 WL 1499493, at *4.

10       The Court concludes that EMC has demonstrated that its declaratory relief action arises out

11   of, and relates to, the Sanctuary Defendants' forum-related contacts regarding the supply contracts

12   with Advoque and Ciasom.  The second prong of the minimum contacts test therefore is satisfied.

13           **3.       Exercise of Jurisdiction is Reasonable**

14       Because EMC has satisfied its burden with respect to the first two prongs of the minimum

15   contacts test, the burden shifts to the Sanctuary Defendants to set forth a "compelling case that the

16   presence of some other considerations would render jurisdiction [in California] unreasonable."

17   *Freestream*, 905 F.3d at 607.  Courts in the Ninth Circuit consider a seven-factor balancing test

18   when addressing the question of reasonableness:  "(1) the extent of the defendant's purposeful

19   interjection into the forum state's affairs; (2) the burden on the defendant of defending in the

20   forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's

21   interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6)

22   the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the

23   existence of an alternative forum."  *Id*.

24       While the Sanctuary Defendants recite these factors, their motion contains only a scant

25   paragraph discussing them, which addresses only the fourth factor with particularity.  *See* Defs.'

26   Mot. at 9-10, ECF 28.  The Sanctuary Defendants argue that "California has no substantial interest

27   in the adjudication of this matter and there is no significant purpose in hearing the action in this

28   forum."  *Id*. at 10.  This argument is unpersuasive, given that EMC seeks a declaration regarding

13

United States District Court
Northern District of California

1    its obligation to defend the Sanctuary Defendants in a California action asserting claims arising

2    out of alleged misconduct directed toward California companies.  The Court finds that the

3    Sanctuary Defendants have failed to meet their burden to show compelling reasons why exercise

4    of personal jurisdiction in this case would be unreasonable.

5          Accordingly, the Sanctuary Defendants' motion to dismiss for lack of personal jurisdiction

6    is DENIED.

7    **III.    MOTION TO DISMISS FOR IMPROPER VENUE**

8          **A.      Legal Standard**

9          A defense of improper venue may be raised by motion under Federal Rule of Civil

10   Procedure 12(b)(3).  When venue is improper, the court "shall dismiss, or if it be in the interest of

11   justice, transfer such case to any district or division in which it could have been brought."  28

12   U.S.C. § 1406(a).  The plaintiff bears the burden of showing that venue is proper.  *See Piedmont*

13   *Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979) ("Plaintiff had the

14   burden of showing that venue was properly laid in the Northern District of California.").

15         Venue is governed by 28 U.S.C. § 1391(b), which provides as follows:

16         **(b) Venue in general. –** A civil action may be brought in –

17             (1) a judicial district in which any defendant resides, if all defendants are
               residents of the State in which the district is located;
18

19             (2) a judicial district in which a substantial part of the events or omissions giving
               rise to the claim occurred, or a substantial part of property that is the subject of
20             the action is situated; or

21             (3) if there is no district in which an action may otherwise be brought as
               provided in this section, any judicial district in which any defendant is subject to
22             the court's personal jurisdiction with respect to such action.

23   28 U.S.C. § 1391(b).

24         **B.      Discussion**

25         EMC's opposition does not expressly argue that venue is proper in this district, but at the

26   hearing EMC's counsel argued that venue is proper under 28 U.S.C. § 1391(b)(2) because a

27   substantial part of the events giving rise to this declaratory relief action occurred here.  In a

28   declaratory relief action brought by an insurer to determine a coverage dispute, the "court looks to

14

the underlying events for which coverage is sought." *Ins. Co. of N. Am. v. Matson Terminals, Inc.*, No. CV 13-08958 SJO (FFMx), 2014 WL 10987407, at *2 (C.D. Cal. Apr. 10, 2014) (internal quotation marks and citation omitted). "This approach makes eminent sense when the action is truly a dispute over whether a given accident, event, or malady qualifies for coverage under a particular insurance policy." *Id*. " In such a scenario, the facts surrounding the claimant's affliction are often integral to a determination on coverage." *Id*.

In *Matson*, the district court found that the facts giving rise to the insured's claim under the policy were not integral to resolution of the insurer's declaratory relief action seeking a coverage determination. *See Matson*, 2014 WL 10987407, at *2. Instead, the parties' coverage dispute required the district court to construe the policy's terms and possibly relevant statutory language. *See id*. Under those circumstances, the court found that venue would depend on where the policy was negotiated or executed, where it was to be performed, and where the alleged breach occurred. *See id*. at *3. Focusing on those factors, the court concluded that the plaintiff had failed to establish that venue was proper in the forum. *See id*. at *3-4.

The present case is factually distinguishable from *Matson*, as EMC's declaratory relief action raises a substantial dispute whether the underlying action qualifies for coverage under the Policies. As EMC argued at the hearing, resolution of that dispute will depend in part on factual determinations regarding the Sanctuary Defendants' conduct. A substantial part of the Sanctuary Defendants' relevant conduct occurred in this judicial district, as the Sanctuary Defendants sold the allegedly defective mask materials to Advoque and Ciasom here. EMC also pointed out that California companies Advoque and Ciasom are named as defendants in the declaratory relief action. The Court concludes that under the standards set forth in *Matson*, EMC has shown that venue is proper in this district under 28 U.S.C. § 1391(b)(2).

This conclusion is consistent with *Bartile*, the Tenth Circuit decision addressing another declaratory relief action brought by EMC. The Tenth Circuit found that substantial events giving rise to EMC's declaratory relief action included Bartile's allegedly negligent work at the luxury hotel in Wyoming. *See Bartile*, 618 F.3d at 1166-67. The Tenth Circuit emphasized that "venue is not limited to the district with the *most* substantial events or omissions," and that venue may be

proper in multiple districts.  *See id*. at 1165-66.

Accordingly, the Sanctuary Defendants' motion to dismiss for improper venue is DENIED.

### IV.  MOTION TO TRANSFER

#### A.  Legal Standard

Even where venue is proper, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  An action "might have been brought" in any court that has subject matter jurisdiction over the claims and personal jurisdiction over the defendant, and where venue would have been proper.  *See Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1040 (N.D. Cal. 2020)

Courts in this District have regularly considered the following factors when deciding whether to transfer a case under § 1404(a):  "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum."  *Doe v. Epic Games,* 435 F. Supp. 3d at 1040; *see also Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011); *Vu v. Ortho–McNeil Pharm., Inc.*, 602 F.Supp.2d 1151, 1156 (N.D. Cal. 2009).  None of these factors is dispositive, and "a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis."  *Ctr. for Biological Diversity v. Kempthorne*, No. 08-1339, 2008 WL 4543043 (N.D. Cal. Oct. 10, 2008) (citation omitted).  "The burden is on the party seeking transfer to show that when these factors are applied, the balance of convenience clearly favors transfer."  *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014) (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).

#### B.  Discussion

In the event the Court declines to dismiss EMC's declaratory relief action, the Sanctuary Defendants ask the Court to transfer the action to the United States District Court for the Eastern District of North Carolina, Sanctuary's home state, pursuant to 28 U.S.C. § 1404(a).  The

Sanctuary Defendants' motion is based in part on its assertion that the Policies were issued to Sanctuary in its home state of North Carolina.  Recognizing that an argument could be made that the Policies were issued in Alabama, the Sanctuary Defendants make an alternative request for transfer to the United States District Court for the Middle District of Alabama if the Court finds that forum to be more appropriate.

As the parties seeking transfer, the Sanctuary Defendants have the burden to show that the declaratory relief action could have been brought in the Eastern District of North Carolina or the Middle District of Alabama, and that the factors listed above clearly favor transfer.  The Sanctuary Defendants have not established that two defendants named in the present declaratory relief action, Advoque and Ciasom, are subject to personal jurisdiction in North Carolina or Alabama.  The transfer motion fails on that basis.

The Sanctuary Defendants argue that Advoque and Ciasom are not proper defendants here. As noted above, Advoque and Ciasom are California-based companies that are named as defendants in EMC's declaratory relief action on the ground that they might become judgment creditors with a direct right of action against EMC.  The Sanctuary Defendants argue that North Carolina law governs EMC's declaratory relief action and that under North Carolina law, neither Advoque nor Ciasom has a legal interest in the Policies.  *See Selective Ins. Co. v. Mid-Carolina Insulation Co.*, 126 N.C. App. 217, 220 (1997) ("[W]hen an injured person is not a party to an insurance liability indemnity contract, and the contract contains no agreement that the insurance shall inure to the benefit of the person injured, the insurance is a matter wholly between the insurer and the insured, and the injured person has no legal or equitable interest.").  It may be that Advoque and Ciasom are improperly joined in the declaratory relief action.  However, they have not been dismissed and, because they are parties, the Sanctuary Defendants must establish that they would be subject to personal jurisdiction in North Carolina or Alabama in order to meet their burden on the motion to transfer.

In their reply brief, the Sanctuary Defendants suggest that this Court could sever Advoque and Ciasom and transfer the remainder of the declaratory relief action to the Eastern District of North Carolina or the Middle District of Alabama.  The Court is not inclined to sever EMC's

1   action based on an argument raised in the Sanctuary Defendant's reply brief.  Moreover, it is the

2   Court's view that Defendants have not identified an adequate basis for severance, other than their

3   preference to litigate in Sanctuary's home state.

4          Even if the Court were inclined to sever the action (which it is not), the Sanctuary

5   Defendants have not demonstrated that the relevant factors clearly favor transfer of EMC's

6   declaratory relief action against them.  The first factor, the plaintiff's choice of form, does not

7   favor transfer.  It is not clear that the second factor, convenience of the parties, favors transfer.

8   While litigating in its home state of North Carolina would be more convenient for Sanctuary, 305

9   Consulting is based in Nevada, Bryan Sigler is a resident of Florida, Advoque and Ciasom are

10  based in California, and EMC is based in Ohio.  With respect to the third and fourth factors,

11  convenience of witnesses and access to evidence, respectively, the Sanctuary Defendants have not

12  identified any witnesses or evidence located in North Carolina or Alabama.  The fifth factor, the

13  familiarity of each forum with applicable law, favors transfer because it appears that the law of

14  North Carolina or Alabama will govern interpretation of the Policies.  The sixth factor, feasibility

15  of consolidation with other claims, is not applicable.  The seventh factor, local interest in the

16  controversy, does not favor transfer.  California has an interest in determining whether insurance is

17  available to compensate California companies Advoque and Ciasom should they prevail in the

18  underlying action.  Finally, the Court has no information regarding the eighth factor, the relative

19  congestion of the courts.

20         The Court having considered the relevant factors and exercised its discretion, the

21  Sanctuary Defendants' motion to transfer is DENIED.

22  **V.    ORDER**

23         (1)    The Sanctuary Defendants' motion to dismiss or, in the alternative, to transfer is

24                DENIED; and

25         (2)    This order terminates ECF 28.

26

27  Dated:  January 18, 2023

28

BETH LABSON FREEMAN
United States District Judge

18